UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTA COLVARD,                          Case No. 09-13012

         Plaintiff,               Paul D. Borman
v.                                        United States  District Judge

COMMISSIONER OF                           Michael Hluchaniuk
SOCIAL SECURITY,                          United States Magistrate Judge

         Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 12)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On July 30, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D.

Borman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability

benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for

summary judgment.  (Dkt. 8, 12).

B.    Administrative Proceedings

Plaintiff filed the instant claims on June 29, 2006, alleging that she became unable to work on January 19, 1999. (Dkt. 7, Tr. at 45). The claim was initially disapproved by the Commissioner on August 16, 2006. (Dkt. 7, Tr. at 32-35). Plaintiff requested a hearing and on April 28, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Kathryn D. Burgchardt, who considered the case *de novo*. In a decision by the Appeals Council dated June 25, 2008, the ALJ found that plaintiff was not disabled. (Dkt. 7, Tr. at 10-19). Plaintiff requested a review of this decision on July 22, 2008. (Dkt. 7, Tr. at 7). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 8, 2009, denied plaintiff's request for review. (Dkt. 7, Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    ALJ Findings

Plaintiff was 57 years of age at the time of the most recent administrative hearing. (Dkt. 7, Tr. at 45). Plaintiff's relevant work history included

approximately 8 years as a data entry clerk, a patient transporter, and housekeeper. (Dkt. 7, Tr. at 65). In denying plaintiff's claims, defendant Commissioner considered status post back surgery in 1999 and reflux disease as possible bases of disability. (Dkt. 7, Tr. 15).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 19, 1999. (Dkt. 7, Tr. at 15). At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7, at 16). At step four, the ALJ found that plaintiff could not perform her previous work as a patient transporter, and housekeeper. (Dkt. 7, at 15). However, the ALJ determined that plaintiff could perform her past relevant work as a data entry clerk, which did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 18).

Two weeks after her laminectomy in October, 1999, Dr. Soo placed the following restrictions on plaintiff: no twisting, no back bending, and no lifting more than 20 pounds. (Tr. 281). He had previously opined that plaintiff could return to work 3-6 months after surgery. (Tr. 317). The restrictions section on that form was stricken out, suggesting, according to the Commissioner, that plaintiff

could return to her specific work as a housekeeper.  In April 2000, Dr. Soo

indicated plaintiff could return to work in May with no lifting over 15 pounds, no

repeated bending or twisting, and no standing, walking, or sitting for more than an

hour at a time.  (Tr. 318).  The next medical evidence concerning musculoskeletal

issues is in August 2001.  X-rays of the lumbrosacral spine indicated that L4, L5,

and S1 were fused together as a result of surgery, and there was a Grade I anterior

subluxation of L5 on S1. (Tr. 310).  A myelogram indicated mild narrowing of the

thecal sac at L3-L4.  (Tr. 311).  A CT scan in October found a moderate bulging

disc at L3-L4 resulting in mild spinal stenosis.  It also noted the fusion as a result

of surgery.  (Tr. 312).

About two years would pass before plaintiff saw a medical professional

again about her back.  Records in 2003 indicate a few medical encounters,

including a shoulder X-ray, mammography, and surgery for gastric reflux disease.

(Tr. 100-03).  There is a note from Dr. Lackey on a prescription pad dated October

2003, indicating that plaintiff was medically unable to return to work even with

restrictions, and that she would be re-evaluated in December 2003.  (Tr. 309).

According to the Commissioner, there is no indication of whether the doctor's

conclusion refers to plaintiff's specific work as a housekeeper or any work at all.

The note indicated that Dr. Lackey would re-evaluate plaintiff on December 12,

2003.  There is no record of any further evaluation by Dr. Lackey, or a record of

her clinical findings leading to her conclusion. In December 2003, plaintiff received a trial of an interthecal catheter containing opioids. (Tr. 111-12). The procedure was successful, as she reported a pain score of 0 out of 10 and departed the hospital by walking. (Tr. 111). Prognosis was "good." (Tr. 115).

Plaintiff had a permanent catheter placed in July 2004; the operation appeared to go well. (Tr. 117-18). Her prognosis was good. (Tr. 123). Later in the year, a MRI of the lumbar spine was performed. (Tr. 125). In addition to post-surgical changes, there were cystic structures that were most likely seromas but might be a psuedomeningocele. In early 2005, the catheter was removed as plaintiff stated that it failed to control the pain and was uncomfortable. (Tr. 126). The record contains two forms from A. Dianne Obayan, M.D. One indicates that plaintiff could not work from September 23, 2005 to February 2006. It is dated January 27, 2006. (Tr. 163). The other is dated February 20, 2006 and indicates no activity for one month. (Tr. 164). There are no evaluation or treatment records from Dr. Obayan.

In January 2006, Dr. Robert Johnson, a neurosurgeon, evaluated plaintiff. She was taking 4 mg of Dilaudid every four hours and had a fentanyl patch in addition to other medications. (Tr. 132). Dr. Johnson recommended running additional tests. On follow-up, her motor function, sensory function, coordination, and reflexes were normal. (Tr. 134). X-rays showed no abnormal motion with a

small amount of bone formation in the transverse process gutters from L4 through S1 and a mild bulge at L3-L4 with some canal narrowing. Dr. Johnson did not feel the objective evidence explained why plaintiff was reporting as much pain as she did and did not think surgery would help. (Tr. 135). He recommended either continuing the current regimen or adding a spinal cord stimulator. Dr. Johnson referred plaintiff to pain management specialist Dr. Sushovan Chakrabortty, who examined her in March 2006. (Tr. 148). After trying medicines and other procedures, the doctor placed two temporary spinal cord stimulators. (Tr. 149) and referred her for the placement of a permanent stimulator (which was done in December 2006). (Tr. 197-98).

State agency physician Charles Edmonds evaluated Plaintiff's file in August 2006. His review was limited to plaintiff's status before March 31, 2004, the date last insured. (Tr. 137). He noted the prior history of lumbar laminectomy and the 2004 MRI. He also noted the 2003 and 2004 catheter placements. Dr. Edmonds wrote: "Pain has been the presenting impairment for lowering this [claimant's] quality of life and will be considered markedly intrusive for this [residual function capacity assessment]." (Tr. 138). He concluded that plaintiff could occasionally lift ten pounds but could frequently lift fewer than ten pounds. She could stand at least two hours a day and sit at least six hours. She could push and pull the

weights described above, and could climb stairs, stoop, kneel, crouch, and crawl occasionally. (Tr. 139).

B.    Plaintiff's Claims of Error

Plaintiff's first claim of error is that the ALJ did not give appropriate weight or even acknowledge the treatment between 2001 and the last date insured of March 31, 2004. Dr. Soo referred plaintiff to Providence Hospital on August 29, 2001 for X-rays of her lumbar spine due to pain. ( Tr. 310). On October 11, 2001, plaintiff underwent a lumbar myelogram and CT scan, also at Dr. Soo's request. (Tr. 312). On October 10, 2003, Dr. Lachey evaluated plaintiff and wrote that she was medically not able to return to work even with restrictions. (Tr. 225). On December 4, 2003, plaintiff underwent a procedure where a catheter was inserted into her spinal canal for infusion of therapeutic or palliative substances due to her diagnosis of post laminectomy syndrome of lumbar region. (Tr. 111-117).

Plaintiff also asserts that, contrary to SSR 96-2p, the ALJ did not give appropriate weight to plaintiff's treating physician, which was legal error. Dr. Lachey stated that he evaluated plaintiff on October 10, 2003 and that she was unable to work at all. (Tr. 225). Taken into conjunction with the medical records pertaining to the insertion of the morphine pump for post-laminectomy syndrome, as well as those evidencing that she was present for additional x-rays, CT scan and myelogram, a reasonable mind would accept Dr. Lachey's opinion as adequate to

support a conclusion that plaintiff was completely disabled prior to the last insured date.

Plaintiff also argues that the ALJ did not give appropriate weight to her testimony contrary to SSR 96-7p. The ALJ specifically limited her line of questioning to the time period between plaintiff's surgery and her last insured date, March 31, 2004. Plaintiff explained that despite the surgery, various procedures burning the affected nerves, and medications, the only thing that relieved her pain is lying down on her side. Contrary to SSR 96-7p, plaintiff asserts that, not only did the ALJ not assess the credibility of her testimony, but did not even take into consideration any of plaintiff's testimony.

Next, plaintiff asserts that the ALJ gave inappropriate weight the RFC assessment report of the state agency doctor, contrary to SSR 96-6p. In Dr. Edmond's evaluation, he reviewed plaintiff's medical records and indicated that her "lumbar laminectomy apparently failed." He also stated that her condition had caused intractable back pain, that she received an intrathecal opioid in December, 2003, which was re-calibrated in July, 2004, that pain had been the presenting impairment lowering her quality of life and will be considered "markedly intrusive" for his RFC assessment. According to plaintiff, Dr. Edmond's assessment that she was able to perform sedentary exertional work is inconsistent with his conclusion that her pain was "markedly intrusive." (Tr. 137-144).

Report and Recommendation
Cross-Motions for Summary Judgment
*Colvard v. Comm'r*; 09-13012

Plaintiff next argues that the ALJ improperly concluded that her statements concerning her symptoms were not credible because they were inconsistent with the residual functional capacity assessment by Dr. Edmond. (Tr. 18). According to plaintiff, had the ALJ reviewed and applied Dr. Edmond's conclusions cited in his RFC assessment report, she would have seen that it was completely consistent with plaintiff's testimony regarding her pain and functional limitations.

According to plaintiff, the ALJ failed to articulate a realistic RFC. Specifically, the ALJ determined that plaintiff retained an RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a), reduced by being limited to lifting or carrying less than ten pounds frequently and ten pound occasionally (from very little, up to one third of an eight hour workday), being able to stand and/or walk (with normal breaks) for a total of six hours in an eight hour workday, being able to perform pushing and pulling motions with her upper and lower extremities within the aforementioned weight restrictions, being restricted to a relatively clean: work environment (low levels of pollutants), being able to perform each of the following postural activities occasionally: climbing, stooping, crouching, kneeling, crawling, and no use of ladders/ropes/scaffolds.

(Tr. 16). When examined by the ALJ, the VE indicated that although unable to perform her prior job as a housekeeper, plaintiff's prior job a data entry clerk would fit the ALJ's proposed RFC. (Tr. 372). However, according to plaintiff, the ALJ did not describe a realistic RFC because (1) plaintiff's treating doctors

performed surgery, diagnosed post-laminectomy syndrome and intractable low back pain, and surgically implanted an intra-thecal catheter into her spine for the direct delivery of morphine into her body, (2) Dr. Edmund specified that pain was the impairment lowering the plaintiff's quality of life and markedly intrusive in her functional capacity, and (3) the VE testified that there were no jobs that could be performed by plaintiff if she was not able to sustain concentration, persistence, and pace for a 5 day, 8 hour per day, 40 hour work week. Plaintiff argues that the ALJ did not consider the allegations of physical limitations or restrictions sufficiently contained in the record in accordance with SSR 96-8p and ignored the objective medical evidence. Finally, plaintiff asserts that a "realistic RFC" would preclude plaintiff from engaging in a full range of sedentary work activities on a regular and continuous basis.

C.     <u>Commissioner's Cross-Motion for Summary Judgment</u>

The Commissioner notes that plaintiff must demonstrate a disability that was present in March, 2004 (the last month she was insured) and that was continually present through June 2005. According to the Commissioner, the ALJ's conclusion that plaintiff was not disabled through March 31, 2004 is supported by several lines of evidence. First, there is a very little medical evidence between the time of the surgery and the date last insured. Meanwhile, plaintiff received evaluation or treatment for other conditions, such as a routine mammogram, a shoulder X-ray,

and surgery for gastric reflux disease. (Tr. 100-03). It was reasonable, the Commissioner asserts, for the ALJ to expect that a claimant who suffered from disabling pain and loss of function would be under the regular care of a physician. However, the record shows only scattered contact with doctors from 2000 to the date last insured concerning back problems.

Secondly, the Commissioner argues that the ALJ's view is consistent with the opinion of the physician most knowledgeable about plaintiff's condition during the relevant time period, Dr. Soo. Two weeks after plaintiff's surgery, Dr. Soo wrote a letter restricting her from twisting, bending, or lifting greater than twenty pounds. (Tr. 281). Prior to the surgery, he had indicated that plaintiff could return to work three to six months after surgery (*i.e.*, January to April 2000) without listing any restrictions. (Tr. 317). In April 2000, he indicated that plaintiff could return to duty on May 15 as long as she did not lift over 15 pounds, did not repeatedly bend or turn, and did not stand, walk, or sit more than an hour at a time. (Tr. 318). The ALJ's decision is also consistent with that of state agency physician Dr. Edmond. Only a brief, unsupported note from Dr. Lackey stands against the opinion of the operating neurosurgeon in this case. The Commissioner asserts that the ALJ was entitled to defer to Dr. Soo's superior longitudinal knowledge of plaintiff's impairment, his specialized expertise, and his unique involvement in her care.

In addition, the Commissioner argues that plaintiff's claims of error are without merit. Plaintiff first argues that the ALJ improperly considered or failed to consider the medical records between 2001 and the date last insured (March 31, 2004). Plaintiff, however, can only point to four relevant medical contacts over the course of three and one-third years. Two are imaging studies (an August 29, 2001 X-ray and a October 11, 2001 X-ray). One is the brief note from Dr. Lackey on October 10, 2003 and the fourth contact is the catheter insertion in December 2003. The Commissioner also points out that plaintiff offers no explanation for why she did not seek treatment more than four times for an allegedly disabling back condition. And, according to the Commissioner, the specific records relied on by plaintiff are not particularly persuasive, given that the two radiology records do not articulate any findings that would suggest disabling pain. Rather, the Commissioner asserts that these records indicate that the objective medical evidence simply does not line up with plaintiff's claim that she was disabled during the time period in question. As noted above, Dr. Lackey's note - the only documentation of an office visit during the entire period - is cursory. The final record, an interthecal catheter trial, is the only one of the four records that pertains to treatment. Although the ALJ did not specifically mention the trial in his decision, she did mention the permanent insertion in 2004 a few months after the date last insured. She also indicated her awareness of the 2003 procedure during

the hearing.  (Tr. 346).  The ALJ also relied on Dr. Edmonds' opinion, and the doctor explicitly considered the 2003 trial catheterization.

Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Lackey's October 2003 prescription pad note stating that plaintiff was disabled. In response, the Commissioner does not concede that Dr. Lackey was a treating source, as the only medical evidence provided by him during the relevant time period was that one note.  Further, the Commissioner argues that the ALJ gave good reasons for rejecting his opinion.  She noted there was no explanation in the note as to why plaintiff was disabled or any description of her current physical status. (Tr. 225).  Moreover, there were no symptoms, signs, or laboratory findings offered in support of Dr. Lackey's position or any evidence in the record of more than one visit anywhere near the time of his opinion; as the ALJ noted, the contemplated follow-up was never done.  Thus, according to the Commissioner, Dr. Lackey's description of plaintiff's condition was not consistent with the medical evidence in the case, particularly the objective medical evidence which showed only mild-to-moderate radiological findings after surgery.  Finally, the Commissioner argues that Dr. Lackey's conclusion that plaintiff could not return to work is not only ambiguous in that it may refer only to her housekeeping work and, in any event, is an issue reserved to the Commissioner.

Plaintiff next argues that her testimony was ignored. According to the Commissioner, this assertion is incorrect. The ALJ wrote that plaintiff's statements about her pain and the functional effects of her impairment were only partially credible. (Tr. 18). She accepted some of plaintiff's assertions, limiting her to a rather restrictive residual functional capacity allowing for a reduced level of sedentary work. But she explained that plaintiff's sparse medical history before the date last insured undercut her allegations of disabling pain during her insured period.

Plaintiff next argues that the ALJ's decision is inconsistent with the opinion of the state agency physician because of some language in the physician's justification for his conclusion. The Commissioner argues that plaintiff ignores the state agency physician's actual conclusion: that despite her pain, plaintiff could still occasionally lift 10 pounds and frequently lift less than 10 pounds, could stand or walk for at least two hours a day and sit for about six, and could push and pull in line with her carrying abilities. (Tr. 138). She could occasionally climb stairs, stoop, kneel, crouch, and crawl. (Tr. 139). According to the Commissioner, the very comments plaintiff quotes are justifications for the exertional limitations Dr. Edmonds imposed on her. (Tr. 138 ("Explain how and why the evidence supports your conclusions in item 1 through 5.")). Dr. Edmonds' comments came immediately after his answers to the exertional questions, which established that

plaintiff could do sedentary work. The Commissioner posits that the only way to give effect to both Dr. Edmonds' specific statements about plaintiff's residual capacity and his overview of the medical evidence is to read the opinion as severely curtailing but not eliminating plaintiff's ability to perform work-related activities, which is completely consistent with the ALJ's findings.

Finally, plaintiff argues that the ALJ committed legal error in her residual functional capacity assessment. Much of this argument, according to the Commissioner, duplicates plaintiff's earlier arguments concerning treatment between 2001 and the date last insured and the interpretation of Dr. Edmonds' opinion. Plaintiff also looks to the vocational expert's testimony that a hypothetical individual who "is unable to sustain concentration, persistence, and pace necessary to consistently fulfill work for eight hours a day, five days a week in order to complete a 40-hour work week" could not work as contemplated by steps four or five of the disability determination process. However, plaintiff does not point to any evidence that her ability to maintain concentration, persistence, and pace was markedly restricted prior to the date last insured. Rather, according to the Commissioner, plaintiff cites to no evidence about concentration, persistence, or pace at all. She does not even point to objective complaints of disabling side effects from medication while insured. Plaintiff appears to be arguing that her pain was such that it would make her unable to concentrate or

focus.  However, in doing so she merely restates her disagreement with the ALJ's assessment of her back impairment.  She also fails to explain why her treating surgeon, Dr. Soo, felt she could return to work.  In sum, the Commissioner argues, plaintiff's assertion that she lacked the concentration, persistence, and pace to work is based on speculation rather than actual objective medical evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc.Sec.Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

1.     Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### 2. Treating physician evidence

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

The undersigned concludes that the ALJ's conclusion that Dr. Lackey was not a treating physicians and that his opinion was wholly unsupported by any medical evidence of record, was based on substantial evidence. One note on a prescription pad does not present the opinion of a treating physician that is entitled to substantial weight as contemplated by the regulations. At the hearing, the ALJ made it very clear to plaintiff and her lawyer that additional records from the time

period at issue were required and that the lack of contemporaneous records of treatment from that time frame could negatively impact plaintiff's claim. (Tr. 345) ("I also don't have a lot of medical information from the time frame we're looking at.") (Tr. 346) ("[D]uring the time frame it looks like she received an opioid pump in December of 2003. I've got nothing on that other than just passing references from more recent medical which really isn't helpful for me. I would like the additional medical evidence, anything between ... the time frame I'm looking at, in 1999 at the time of the injury until the date last insured, March of 2004 so I can get a better idea of what her condition was."). Plaintiff's counsel indicated that such evidence existed and that he would submit it. (Tr. 367). The ALJ gave plaintiff 30 days to submit additional medical evidence from the time frame at issue and she failed to do so. (Tr. 367). The ALJ's assessment of the treating physician evidence was appropriate and supported by the substantial evidence of record.

### 3. RFC and credibility

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."

*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531.

Most of plaintiff's objections to the decision of the ALJ are variations on the theme that he failed to take into account the treating physician evidence and failed to fully credit her limitations and impairments as described at the hearing. Plaintiff's claim of additional restrictions and limitations beyond those found by the ALJ seem to be based on the mere existence of her conditions, rather than on any resulting impairments or specific restrictions. While the record reveals that plaintiff's condition resulted in several limitations, as found by the ALJ, the mere existence of a particular condition is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v.*

*Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms."). Plaintiff essentially urges the Court to conclude that the placement of an opioid pain pump as requiring a finding that she was disabled from all work. Such a conclusion finds no support in the medical records (particularly where her level of pain was reported at 0 on leaving the hospital after the procedure) or in the regulations. Plaintiff has simply failed to establish that there is substantial evidence in the record showing that she was continuously disabled from all work during the relevant time frame.

Moreover, plaintiff does not offer any opinion from a treating physician[1] that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). In fact, the only treating physician to offer such an opinion, Dr. Soo, was entirely consistent with

---

[1] As set forth above, plaintiff has not established that Dr. Lackey was a treating physician as defined in the regulations and thus, his conclusory opinion is not entitled to any weight.

the ALJ's RFC findings. Plaintiff's complaint that the ALJ should not have relied on the consulting physician's RFC because his comments were inconsistent with his conclusions is unfounded. It is clear that Dr. Edmunds relief on plaintiff's pain complaints and conditions to conclude that she was substantially impaired, given that he found she was limited to sedentary work. To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986). Plaintiff merely points to her subjective complaints and testimony to support her claim that she was more physically restricted and had more severe mental limitations than those found by the ALJ. In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent medical evidence.

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding. The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he

reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In light of the medical and other evidence discussed above, the lack of physical restrictions or mental impairments noted by any treating physician, the undersigned concludes that the VE's opinion is consistent with the findings of treating and consulting physicians and mental health professionals, and can properly be considered substantial evidence. Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility

Report and Recommendation
Cross-Motions for Summary Judgment
*Colvard v. Comm'r*; 09-13012

determination and that the hypothetical relied on properly reflected plaintiff's limitations.

C.    Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  | s/Michael Hluchaniuk |
|---|---|
| Date: August 18, 2010 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## CERTIFICATE OF SERVICE

I certify that on August 18, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Gary Eisenberg, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb

Judicial Assistant

(810) 341-7850

darlene_chubb@mied.uscourts.gov
